561 So.2d 450 (1990)
Alton N. GATHINGS, et al., Appellants,
v.
WEST AMERICAN INSURANCE COMPANY, et al., Appellees.
No. 89-1478.
District Court of Appeal of Florida, Fifth District.
May 17, 1990.
Jerri A. Blair, Leesburg, for appellants.
Alton G. Pitts, Orlando, for appellees.
PER CURIAM.
This case involves competition between claimants to limited uninsured motorist insurance benefits.
Alton Gathings was driving an insured vehicle with his wife, Joan, and her parents, Ernest and Esther Van Houton, as passengers, when the Gathings' vehicle was struck by an uninsured motor vehicle. Alton Gathings and Ernest Van Houton suffered serious bodily injuries and Esther Van Houton sustained fatal injuries. The values of the claims of Alton Gathings, Ernest Van Houton and the estate of Esther Van Houton were each in excess of $25,000.
The uninsured motorist insurance (UMI) coverage limits were $25,000 as to any one person subject to a limit of $50,000 as to all claims arising out of one accident. Under the UMI policy provisions the Gathings, as policy holders, were the "named insureds" and the Van Houtons, as occupants of the covered auto, were "covered persons." The first UMI claims were filed by Ernest Van Houton and the estate of Esther Van Houton. The insurer paid the estate the policy limits of $25,000. Ernest Van Houton accepted a settlement of $12,500. After settlement of the Van Houton claims, the Gathings made a claim for UMI benefits. The insurer offered them $12,500, being the balance of the policy limits of $50,000 less the $37,500 paid on the Van Houton claims. The Gathings declined the proffered payment and filed this action alleging a breach of contract. The trial court entered summary judgment for the insurer on the basis that the Gathings complaint failed to state a cause of action. The Gathings appeal.
The Gathings argue that the trial court erred in entering summary judgment because they claim that in the payment by the insurer of the limited UMI benefits, policyholders (named insureds) are entitled to some preference or priority, over or against the claims of "covered persons" and that the insurer had a duty to give, and they were entitled to notice and an opportunity to assert and effectuate their preferential or priority claim before the insurer paid the "covered persons'" claims. The Gathings claim that as named insureds, the policyholders' preference or priority over "covered persons" is not based on any express provision in the insurance policy, or in any statute but is based on a "reasonable expectations" argument that "it is reasonable for named insureds to expect" that *451 the UMI insurer will take affirmative action to see that the claims of named insureds are protected from the possibility that the claims of "covered persons" might diminish or deplete the limited UMI benefits.
The insurer argues that it must only exercise good faith in paying claims as they are made. The insurer relies on Harmon v. State Farm Mutual Automobile Insurance Company, 232 So.2d 206 (Fla. 2d DCA 1970), where, in a closely related situation, the insurer paid the entire UMI benefits to the son of the named insured vehicle owner and a "named insured," leaving no UMI benefits for Harmon, a passenger and a "covered person." Harmon sued the UMI insurer and argued that the insurer owed him a duty not to settle with the other insureds without his prior knowledge and consent. The Second District upheld the dismissal of Harmon's complaint, noting that since the uninsured motorist statute was enacted to place an insured under a policy of automobile liability insurance, who is injured as a result of the wrongdoing of an uninsured motorist, in the same position as if that uninsured motorist had maintained a policy of liability insurance, Harmon's claim for uninsured motorist benefits must be analyzed in the same manner as if it were a claim against the liability insurer of the person who caused the accident. In utilizing such an analysis, where multiple claims arise out of one accident, the liability insurer has the right to enter reasonable settlements with some of those claimants, regardless of whether the settlements deplete or even exhaust the policy limits to the extent that one or more claimants are left without recourse against the insurance company. The court concluded that the insurer had acted properly in remitting payment of uninsured motorist benefits to the other insureds notwithstanding the fact that such payments exhausted the policy limit:
In the case sub judice, if [Harmon was] making a claim against a liability insurer which insured the person responsible for the death of [his] son, ... he could not complain of the situation in which he finds himself. Florida's uninsured motorist statute was passed to place insureds who are injured by uninsured motorist in the same position as if those motorists had been insured. [Harmon] asks us to place him in a preferential position or make him better off than if the uninsured motorist had maintained liability insurance. This was not the intent of the legislature. [citations omitted].
Although we appreciate [Harmon's] distinction between claims of insureds under insurance policies and mere third-party claims against liability insurers, we feel that to impose a duty upon insurers to ascertain all claimants under their uninsured motorist coverages before settling with any, and to require them to settle such claims at their peril is contrary to the policy of encouraging compromises and speedy settlements, and would do more harm than good. If such a duty is to be imposed under the uninsured motorist statute, it must be done by the legislature. (footnotes omitted).
232 So.2d at 208.
The Gathings argue that the reasoning in Harmon should be distinguished and the result different because here the Gathings are the policyholders who paid the premium on the UMI coverage whereas Harmon was not a policyholder. However, the Gathings' claim against their UMI insurer is for breach of contract and they have failed to show that their UMI insurer had any contractual duty to notify them and obtain their consent before settling the Van Houtons' "covered persons'" claims. Accordingly, we hold that the rationale in Harmon should also apply in this case and that the trial court was correct and the summary judgment should be
AFFIRMED.
COWART, HARRIS and GRIFFIN, JJ., concur.