656 So.2d 217 (1995)
Deborah PEARSON, individually and as Personal Representative of the Estate of Tyshika Pearson, a minor, Appellant,
v.
Sergio A. DeLAMERENS, M.D., Sergio A. DeLamerens, M.D., P.A., Abelardo Retureta, M.D., Athena C. Pefkarou, M.D., Enrique A. Escalon, M.D., Enrique A. Escalon, M.D., P.A., and Harry Pearson, Appellees.
Nos. 93-1254, 93-953 and 93-955.
District Court of Appeal of Florida, Third District.
May 31, 1995.
Rehearing Denied July 12, 1995.
*218 Gaebe, Murphy, Mullen & Antonelli and Michael J. Murphy, Coral Gables, for appellant.
Stephens, Lynn, Klein & McNicholas, P.A., and Philip D. Parrish, Diaz & Morel-Saruski, Miami, Hicks, Anderson & Blum, P.A., and Bambi Blum, Miami, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane, P.A., and Shelley H. Leinicke and Ila J. Klion, Ft. Lauderdale, Robert S. Korschun, Melvin C. Alldredge, for appellees.
Before NESBITT, COPE and LEVY, JJ.
COPE, Judge.

I.
Deborah Pearson appeals an order apportioning and approving a partial settlement in a wrongful death action. We reverse.

I.
Appellant Deborah Pearson and appellee Harry Pearson were formerly husband and wife. In 1976 they adopted an infant, Tyshika Pearson. In 1980 the parties divorced. The mother had primary custody. Although the father had visitation rights, he saw the child infrequently in the ensuing nine years.
In 1985 the child was diagnosed with cancer. In 1989 the child died after a brief hospitalization. The child was 13 years old at her death.
The mother became personal representative of the child's estate. She brought a wrongful death action on her own behalf, and on behalf of the father, as survivors. The father joined as plaintiff and at all times pertinent to this appeal was represented by independent counsel.[1]
Insofar as pertinent here, the wrongful death action was brought against the appellee oncologists,[2] who had treated the child from the onset of her non-Hodgkin's lymphoma. The complaint alleged that the oncologists had failed to properly monitor the drugs used in the child's chemotherapy. Plaintiffs asserted that although the chemotherapy was effective against the cancer, the improperly monitored medications triggered complications resulting in the child's untimely death.
*219 The oncologists made independent offers to settle the mother's and father's respective claims. They offered $700,000 to settle the mother's claim and $10,000 to settle the father's claim. Under the terms of the proposal, neither offer was contingent on acceptance of the other. If one survivor accepted and the other did not, the case would be settled as to the settling survivor and would proceed as to the nonsettling survivor.
The mother found the $700,000 figure satisfactory for her individual claim. She accepted the offer.[3]
The father's counsel was not able to reach the father about the $10,000 offer. The $10,000 offer was to be open only for a very short time. Faced with the prospect that the $10,000 offer was about to expire, the father's counsel requested that the personal representative accept the offer, subject to the father's right to object at the time the settlement was submitted for court approval. A memorandum from the father's counsel to the personal representative's counsel stated:
I have tried to reach Harry Pearson by telephone today without success. No one answered the telephone at his residence. Therefore, he is unaware of the renewed offer of $10,000 which will expire at Noon. Consequently, I suggest that your client exercise her authority as PR [personal representative] and accept this offer for him. If he wishes to reject it, then he will do so in the Probate Court. Any acceptance of this offer by you or your client is subject to his subsequent rejection in the Probate Court or otherwise.
This will also confirm that the present offer is from some but not all of the defendants and the case will proceed against the remaining defendants. There will be no release of any claim he may have against these other defendants.
On the basis of the foregoing message, the personal representative accepted the $10,000 offer on behalf of the father. At that time the oncologists were advised that the father had not personally signed off and that he might object to the settlement when it was submitted for court approval. All parties were aware that in the event of an objection, there could be no binding settlement without approval by the court. Under the Wrongful Death Act, "no settlement as to amount or apportionment among the beneficiaries which is objected to by any survivor ... shall be effective unless approved by the court." § 768.25, Fla. Stat. (1993). If the $10,000 settlement offer had not been accepted, then the litigation would have proceeded as to the father's claim with only the mother's claim being settled.
The personal representative filed a motion for approval of the two settlements with the oncologists. In the meantime the personal representative was advised that the father had tentatively objected to the $10,000 settlement amount for the father's claim. A letter setting forth that tentative objection was appended to the motion for approval. The court approved the $700,000 settlement for the mother, and scheduled an evidentiary hearing to consider the father's objection to the $10,000 amount.
Prior to the evidentiary hearing, the oncologists filed a motion to enforce the $10,000 settlement of the father's claim. At the evidentiary hearing, the oncologists adduced evidence on the question of the reasonableness of the $10,000 amount. The oncologists' evidence indicated that there was little contact between the father and the child during the last nine years of her life. In response the father testified about the nature of his relationship with the child and his assistance in childrearing, chiefly in the first four years of the child's life prior to the parents' divorce. The court took the matter under advisement.
The father then filed a motion for apportionment of the settlement. In it, he contended that the $700,000 offer and the $10,000 offer should not be viewed separately, but instead should be treated as a single unapportioned total of $710,000. The father argued that the court had the authority to do *220 this, and to establish a fair apportionment as if this had been a single lump-sum settlement.
The trial court agreed with the father's position. The court vacated its previous approval of the $700,000 settlement for the mother. The court treated the two settlement amounts as a single sum of $710,000 and awarded $109,230.76 to the father. The mother has appealed.

II.
Under the Florida Wrongful Death Act, it is the responsibility of the decedent's personal representative to bring the wrongful death action on behalf of the survivors and the decedent's estate. The personal representative is responsible for the conduct of the litigation. In so doing, the personal representative acts in a fiduciary capacity.
Under the present Probate Code, the personal representative is a fiduciary who is bound to exercise a standard of care to be observed by a prudent trustee dealing with the property of another and must use his authority for the best interests of interested persons. The personal representative who improperly exercises a power or exercises it in bad faith is liable to interested parties for damages or loss resulting from breach of his fiduciary duties; and may be liable for costs taxable as in chancery actions including attorneys' fees.
Joseph Nesbitt, Probate and the Wrongful Death Action, 51 Fla.Bar J. 428 (1977) (footnotes omitted).
The personal representative is the individual having the power to enter into settlements of wrongful death actions. Insofar as pertinent here, however, if a survivor objects to a settlement as to amount or apportionment, then the settlement is not effective unless approved by the court. § 768.25, Fla. Stat. (1993).[4] Other remedies are supplied by the Probate Code where a personal representative inflicts injury by acting improperly or in bad faith, or in a transaction affected by conflict of interest. See §§ 733.602, 733.609, 733.610, 733.619, Fla. Stat. (1993); cf. Continental Nat'l Bank v. Brill, 636 So.2d 782 (Fla. 3d DCA 1994) (permitting appointment of administrator ad litem in appropriate case).

III.
There was a suggestion in the proceedings below that the Wrongful Death Act does not permit the execution of separate settlements like those entered into here. It was suggested that the Act contemplates that all settlements will be on a lump sum basis, with the trial court thereafter reviewing the apportionment among beneficiaries. We disagree.
The law favors the settlement of disputes. In this case the sole claims were those of the two surviving adults, each of which was represented by independent counsel. The amount offered by the defendant oncologists for the mother's claim was acceptable to the mother. We see no reason why there could not be a partial settlement which would satisfy the mother's claim, so long as the partial settlement did not prejudice the pending claim of the nonsettling survivor.[5] There is no suggestion here that the settlement of the mother's claim in any way prejudices the claim of the father. Consequently, the partial settlement for the mother was permissible. To hold otherwise would require the entire case to proceed to trial, even though the oncologists are prepared to pay, and the mother is prepared to accept, an amount which both sides agree is a satisfactory amount in settlement of her claim.
We conclude, therefore, that there is no impediment in the Wrongful Death Act itself which would proscribe the settlement of an individual survivor's claim, so long as the partial settlement does not prejudice the claims of any nonsettling survivors.

*221 IV.
By combining the mother's $700,000 settlement amount with the father's $10,000 settlement amount and reapportioning it, the trial court in effect found that the mother in her capacity as personal representative had been guilty of such misconduct that a surcharge should be imposed on her, thus allowing the father to invade the mother's settlement. On the facts of the present case, we must respectfully disagree with the trial court because there was neither a disabling conflict of interest nor a conflict which adversely affected the father's interests.
In the present case the father is a competent adult. He hired independent counsel who has represented him from the outset of this case.
The defendant oncologists made separate settlement offers, one for the mother's claim and the other for the father's claim. Neither settlement offer was contingent on the other. If the mother accepted but the father did not, then the case would proceed as to the father's claim. The father was under no compulsion to accept the $10,000 offer; all the father had to do was remain silent and there would be no settlement of the father's claim.
When the oncologists made the $10,000 offer to the father, the oncologists left the offer open for a relatively brief period of time. The time for expiration of the offer was approaching, and the father's counsel had not been able to reach the father to discuss the offer. Accordingly, the father's counsel requested that the personal representative accept the $10,000 offer, subject to the father's ability to object to the $10,000 amount pursuant to section 768.25, Florida Statutes. Acting at the specific request of the father's counsel, the personal representative accepted the offer.
It is abundantly clear that the $10,000 offer in this case was accepted for one reason, and one reason only: the father's independent counsel specifically requested it.[6] Plainly, the father's counsel thought that the $10,000 offer was reasonable given the father's demonstrably attenuated contact with the child over the years; counsel clearly did not want the $10,000 offer to expire. The fact that the father disagreed with his counsel's assessment and later objected is not the fault of the personal representative.
We conclude that there was no wrongdoing on the part of the mother/personal representative and no basis on which to invade the mother's $700,000 settlement. We therefore reverse the order under review and remand with directions to approve the mother's $700,000 settlement.[7]

V.
The remaining question is whether the $10,000 settlement of the father's claim should be approved over the father's objection pursuant to section 768.25, Florida Statutes. The father has consistently objected to the $10,000 settlement as inadequate and desires to proceed with the litigation rather than accept that amount.
For two reasons, we conclude that the $10,000 settlement for the father must be disapproved. First, it is evident that the trial court concluded after evidentiary hearing that the $10,000 settlement figure for the father was inadequate. That is so because the trial court concluded that a much higher figure for the father was appropriate. It would serve no useful purpose to return this matter to the trial court for a new hearing on the fairness of the $10,000 amount, when the trial court's view on that question is self-evident.
Second, the father in this case never actually accepted the $10,000 settlement amount. The father's counsel acted in an effort to protect the father's rights and not allow the settlement offer to lapse. However, the father's *222 counsel acted without having obtained the client's consent, a fact of which the personal representative and the oncologists were aware. This is not a case in which the personal representative is settling the father's claim over the father's objection, but on the contrary is a case in which the personal representative entered into the settlement as an accommodation to the request of the father's counsel.
We conclude that the settlement on behalf of the father must be disapproved.

VI.
In conclusion, the order under review is reversed and the cause remanded with directions to (a) approve the $700,000 settlement of the claim of the mother and the estate, and (b) disapprove the $10,000 settlement of the claim of the father.
Reversed and remanded.
NOTES
[1] The complaint also asserted a claim on behalf of the child's estate. The parties to this appeal agree that the child's estate has no viable claim in this case. The mother had paid the burial expenses and was entitled to be reimbursed directly for doing so. There is no claim for net accumulations and no other basis for a claim on behalf of the estate.
[2] The defendant oncologists on this claim were: Sergio A. DeLamerens, M.D., Sergio A. DeLamerens, M.D., P.A., Abelardo Retureta, M.D., Athena C. Pefkarou, M.D., Enrique A. Escalon, M.D., and Enrique A. Escalon, M.D., P.A.

Other claims were made against other defendants. The claims against the other defendants remain pending below.
[3] The mother as personal representative also agreed to release the oncologists from any claim on behalf of the child's estate. This part of the agreement is of no consequence here, since it is undisputed that the child's estate has no claim under the facts of the present case. See supra note 1.
[4] Court approval is also required if the settlement "affects a survivor who is a minor or an incompetent." Id.
[5] To use a hypothetical example, if the settlement of the mother's claim exhausted the available insurance coverage, plainly the settlement would be prejudicial to the claim of the nonsettling survivor.
[6] The father later suggested that the personal representative accepted the $10,000 amount because of conflict of interest, collusion, or lack of diligence in protecting the father's interests. That suggestion is contradicted by the fact that the acceptance occurred at the specific request of the father's counsel.
[7] In view of this ruling we need not reach, and express no opinion on, the method used by the trial court to apportion the settlement funds between the father and the mother.