745 So.2d 573 (1999)
Beatrice WILLIAMS and Winton Williams, a minor, by and through his mother and legal guardian, Beatrice Williams, Appellants,
v.
INFINITY INSURANCE COMPANY f/k/a Dixie Insurance Company, Allstate Insurance Company and Progressive Specialty Insurance Company, Appellees.
No. 98-2740.
District Court of Appeal of Florida, Fifth District.
December 10, 1999.
*574 Scott A. DiSalvo and David B. Pakula of Fazio, Dawson, DiSalvo, Cannon Abers, Podrecca & Fazio, Fort Lauderdale, for Appellants.
Elizabeth C. Wheeler of Wheeler & Wilkinson, LLP, Orlando, and John W. Bussey, III of John W. Bussey, III and Associates, P.A., Orlando, for Appellee Infinity Insurance Company.
Esther E. Galicia of George, Hartz, Lundeen, Flagg & Fulmer, Fort Lauderdale, and R. Davidde Armas of George, Hartz, Lundeen, Flagg & Fulmer, Winter Park, for Appellee Allstate Insurance Company.
Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for Appellee Progressive Specialty Insurance Company.
COBB, J.
This is an appeal from the final dismissal of an action alleging that the appellees, Infinity Insurance Company, Allstate Insurance Company and Progressive Specialty Insurance Company, acted in bad faith in refusing to unilaterally settle a wrongful death claim with two of the decedent's statutory survivors, the appellants herein, to the exclusion of three other minor children with respect to the available insurance funds.
The facts show that Willie Earl Williams died in 1991 from injuries suffered in an automobile accident in which his vehicle collided with a truck owned by Patrick Piccione and driven by Dustin Wiles. Willie Earl was survived by his wife, Beatrice, and their son, Winton. He was also survived by three other children whose mother was not Beatrice: Nicky Woods, Ricky Terrell, and Mario Williams. All of the surviving children were under the age of 25 at the time of their father's death, and therefore qualified as "minor children" under the Wrongful Death Act. See § 768.18(2), Fla. Stat. (1997). Infinity and Allstate had issued policies to or for the benefit of Wiles, and Progressive had issued a policy to or for the benefit of Piccione. The Infinity and Progressive policies each contained a bodily injury liability limit of $10,000.00, and the Allstate policy contained a $100,000.00 limit.
In 1992, before an estate was opened, Beatrice and Winton Williams demanded that the insurers pay the policy limits totaling $120,000 to settle their individual claims against Wiles and Piccione under *575 the Florida Wrongful Death Act. The insurers acknowledged coverage and responsibility by their insureds for the damages sought, but took the position that they could not pay $120,000 to Beatrice and Winton to the exclusion of other estate beneficiaries because it would prejudice the claims of the latter by exhausting the policy limits. The insurers tendered the policy limits, but on the condition that the tender satisfy the claims of the entire estate rather than just the claims of Beatrice and Winton.
An estate was eventually opened and Beatrice was named personal representative. Beatrice then filed suit under the Wrongful Death Act, as personal representative on behalf of the estate, naming as survivors herself, Winton, and Willie Earl's three other children. The personal representative was represented by the same counsel that now represents Beatrice and Winton in this appeal. The parties settled that suit, with the three insurers paying the $120,000 policy limits to the estate. A stipulation signed by all parties provided that Beatrice and Winton would have the right to file an excess action alleging bad faith based on the insurers' failure to settle with them prior to the opening of an estate. The parties agreed that if Beatrice and Winton prevailed in the excess action, they would be awarded $150,000.[1]
In 1998, Beatrice and Winton Williams filed a complaint seeking damages from the three insurance companies for failing to settle their claims prior to the opening of an estate. Again, the same counsel was representing Beatrice and Winton Williams. The plaintiffs alleged that the insurers breached their duty of good faith by failing to settle with them for the policy limits, instead conditioning the tender of the policy limits on the execution of a release on behalf of all of the survivors of Willie Earl and "forcing" Beatrice Williams to open an estate. Ultimately, the plaintiffs' second amended complaint, setting out the above facts, was dismissed with prejudice and a final judgment for Infinity, Allstate and Progressive entered below. This appeal ensued.
We first observe that an insurer owes a duty to its insured to act in good faith in handling the defense of claims, including the duty "to advise the insured of settlement opportunities, ... give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980), cert. denied, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1981). As this court has noted:
The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass failure to make a good faith offer of settlement within the policy limits)all of which results in the insured being exposed to an excess judgment.
Kelly v. Williams, 411 So.2d 902, 904 (Fla. 5th DCA 1982).
We agree with the trial court's dismissal of the second amended complaint. Although the second amended complaint alleged breach of a duty of good faith by the insurers, no such duty was breached in this case. In fact, the appellants fail in their initial brief to even aver that any duty to settle existed under the circumstances of this case. The most that they can and do assert is that an insurer "may" settle with a beneficiary prior to the opening of an estate. Nowhere do they present authority for the imposition of an obligation on an insurer to settle with one *576 claimant to the exclusion and detriment of other survivors/potential claimants. The appellants, in their brief, repeatedly misstate the issue. The question is not whether a beneficiary may settle or whether an insurer may take an opportunity to settle; rather, the question is whether an insurer is obligated to settle with the first beneficiary who claims insurance proceeds.
The appellants' argument regarding causation is nothing less than incredible. They contend that had the insurers settled with them, no other claims would ever have been made against Wiles and Piccione because without an estate being opened, Willie Earl's other children would not have known about their right to make a claim under the Wrongful Death Act. Beatrice complains that she was "forced" to open an estate as personal representative, thereby compelling her to name the other children in the wrongful death action that she brought on behalf of the estate. Accordingly, argue the appellants, the insurers exposed Wiles and Piccione to additional claims that otherwise probably would not have been made within the two-year statute of limitations of the Wrongful Death Act.
Under the Wrongful Death Act, a wrongful death action may be brought only by the personal representative for the benefit of all of the decedent's survivors and estate. See § 768.20, Fla. Stat. (1997); Continental Nat'l Bank v. Brill, 636 So.2d 782 (Fla. 3d DCA 1994). As has been repeatedly noted, the purpose of requiring the action to be brought by the personal representative is to eliminate the possibility of a multiplicity of suits and a race to judgment. See Funchess v. Gulf Stream Apartments, 611 So.2d 43, 45 (Fla. 4th DCA 1992) ("By requiring the personal representative to bring a single action, the statute eliminates the potential for competing beneficiaries to race to judgment, preferential treatment of one or more beneficiaries in the disposition of their claims and, most significantly, multiple claims and lawsuits against the wrongdoer."); see also Ding v. Jones, 667 So.2d 894, 897 (Fla. 2d DCA 1996) ("It is also clear that the purpose of this provision in the current version of the Wrongful Death Act enacted in 1972, was to eliminate the multiplicity of suits that resulted from each survivor bringing an independent action under the predecessor act.").
Although acknowledging the purposes of the act, the appellants nevertheless contend that insurers are obligated to settle with the first beneficiary who claims entitlement to insurance proceeds. This is simply not the law, nor would it serve the purposes of the Wrongful Death Act to impose such an obligation on insurers. The appellants point out that it has been held that an insurer may settle with a claimant even though there are other claimants and even though such settlement exhausts all of the available insurance proceeds. See, e.g., Harmon v. State Farm Mut. Auto. Ins. Co., 232 So.2d 206, 207-08 (Fla. 2d DCA 1970) ("It is generally held that where multiple claims arise out of one accident, the liability insurer has the right to enter reasonable settlements with some of those claimants, regardless of whether the settlements deplete or even exhaust the policy limits to the extent that one or more claimants are left without recourse against the insurance company."); accord Gathings v. West Am. Ins. Co., 561 So.2d 450 (Fla. 5th DCA 1990). However, none of the these cases involved the wrongful death context. Moreover, these cases do not impose an obligation on an insurer to settle with the first claimant who comes along; rather, they state that an insurer may, if it chooses to, settle with one of many claimants.
Cases involving the wrongful death context have noted settlements prior to the filing of a suit and have allowed them where the sole beneficiary is involved or, where there is more than one beneficiary, the settlement does not prejudice the recovery of other claimants. For example, in Pearson v. DeLamerens, 656 So.2d 217 (Fla. 3d DCA 1995), a wrongful death suit *577 was filed against oncologists whose negligence allegedly caused the death of a child of divorced parents. The oncologists offered the mother $700,000 and the father $10,000 in settlement of the claims. The court noted:
There was a suggestion in the proceedings below that the Wrongful Death Act does not permit the execution of separate settlements like those entered into here. It was suggested that the Act contemplates that all settlements will be on a lump sum basis, with the trial court thereafter reviewing the apportionment among beneficiaries. We disagree.
The law favors the settlement of disputes. In this case the sole claims were those of the two surviving adults, each of which was represented by independent counsel. The amount offered by the defendant oncologists for the mother's claim was acceptable to the mother. We see no reason why there could not be a partial settlement which would satisfy the mother's claim, so long as the partial settlement did not prejudice the pending claim of the nonsettling survivor.5 There is no suggestion here that the settlement of the mother's claim in any way prejudices the father. Consequently, partial settlement for the mother was permissible. To hold otherwise would require the entire case to proceed to trial, even though the oncologists are prepared to pay, and the mother is prepared to accept, an amount which both sides agree is a satisfactory amount in settlement of her claim.
We conclude, therefore, that there is no impediment in the Wrongful Death Act itself which would proscribe the settlement of an individual survivor's claim, so long as the partial settlement does not prejudice the claims of any nonsettling survivors.
656 So.2d at 220. Footnote five, within the quoted portion above, provides:
To use a hypothetical example, if the settlement of the mother's claim exhausted the available insurance coverage, plainly the settlement would be prejudicial to the claim of the nonsettling survivor.
656 So.2d at 220 n. 5.
Had the insurers settled with Beatrice and Winton Williams for the policy limits, the available insurance proceeds would have been exhausted, thereby prejudicing Willie Earl's other children under Pearson. See, e.g., Geico Gen. Ins. Co. v. Arnold, 730 So.2d 782 (Fla. 3d DCA 1999) (insurer's liability is limited to the "each person" limit rather than the "each accident" limit where only one person is injured); Jones v. Zagrodnik, 600 So.2d 1265, 1266 (Fla. 5th DCA 1992) ("[T]he policy limits recovery based on the number of persons injured as a result of the operation of the insured's automobile."). A settlement and release between the insurers and Beatrice and Winton individually would have released the individual claims of the latter, but would have left Piccione and Wiles vulnerable to claims by Willie Earl's other three children. The insurers correctly point out that the only way they could fully protect their insureds was to settle the entire action for the amount of the policy limits, which only the personal representative or all of the beneficiaries could do. The only persons who would have benefitted from the proposed pre-estate settlement were the two appellants. The insureds were better off by reason of the insurers' ability to negotiate a full settlement and release of the entire estate for the policy limits, thereby foreclosing the possibility of any personal out-of-pocket obligation by Piccione or Wiles to any of Willie Earl's survivors. By not settling with Beatrice and Winton Williams individually, the insurers acted in their insureds' best interests.
The weakness of appellants' argument is crystalized by the following paragraph from their reply brief:
What is known at this stage is that the other survivors were not making claims at the time of Ms. Williams' settlement *578 demand, and the insurers did not even know of their existence. Therefore, if the insurers had accepted Ms. Williams' demand they would have protected their insureds in two ways. First, they would have protected the insureds from any further claims by Ms. Williams and her son, the value of which far exceeded the policy limits. Secondly, in all reasonable likelihood no other claims would have been made and the insureds would not have faced any further liability.
It is clear from the instant record that the bad faith in this suit was exhibited by counsel for Beatrice and Winton Williams, not by the insurance carriers, who had the good sense to reject the attempt by the Williamses and their counsel to foreclose the rights of three of the claimants whose interests were represented by that law firm in the settlement below.
AFFIRMED.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] This agreement was made to satisfy and dispense with the requirement that an excess judgment against an insured be recovered before a bad faith suit can be asserted against the insurer. See Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179 (Fla.1994).