806 So.2d 504 (2001)
INFINITY INSURANCE COMPANY, formerly known as Dixie Insurance Company, Appellant,
v.
Barry L. BERGES, Appellees.
No. 2D99-5014.
District Court of Appeal of Florida, Second District.
August 1, 2001.
*505 Elizabeth C. Wheeler, of Wheeler & Wilkinson, LLP, Orlando, and Charles W. Hall and Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for Appellant.
Louis K. Rosenbloum, Pensacola, Robert J. Mayes, Gulf Breeze, Michael S. Rywant and Matthew R. Danahy, Tampa, and Lefferts L. Mabie, III, Tampa, for Appellee.
James Kaplan, Michael Foster, David M. Holmes, and Jeremy A. Stephenson, of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Miami, for National Association of Independent Insurers, Amicus Curiae.
Stephen E. Day and Rhonda B. Boggess, of Taylor, Day & Currie, Jacksonville, for Florida Defense Lawyers' Association, Amicus Curiae.
DAVIS, Judge.
Infinity Insurance Company challenges the $1.8 million final judgment entered in favor of its insured, Barry Berges, on a *506 bad faith claim, and the order awarding Berges his attorneys' fees. Berges cross-appeals the summary judgment granted in favor of Infinity on its alleged bad faith refusal to accept a Cunningham[1] proposal. We affirm the trial court's summary judgment on the Cunningham issue, but reverse the final judgment and attorneys' fee award.
On March 29, 1990, a vehicle driven by Marion Taylor collided with a vehicle owned by Berges but driven by a friend. The collision killed Marion Taylor and seriously injured her minor daughter, who was a passenger in the car. Berges was covered by an Infinity automobile insurance policy that had bodily injury limits of $10,000 per person and $20,000 per accident.
In violation of the policy's terms, Berges did not notify Infinity of the accident. Rather, Infinity first learned of the accident on April 23, 1990, when it received a letter from an attorney representing James Taylor, the surviving spouse of the deceased and the father of the injured minor. Because Berges had not complied with the terms of the policy, which required him to notify the insurance company of the accident and to add the friend as an additional driver residing in his household, Infinity wrote to Berges on May 2, 1990, advising him of the claim and suggesting that his actions may have voided his coverage.
Also on May 2, 1990, Taylor's attorney wrote to Infinity, advising that he no longer represented Taylor on the insurance claims. That same day, Taylor personally delivered to Infinity a hand-written letter offering to settle his wife's estate's death claim for the $10,000 policy limits and his daughter's personal injury claim for the $10,000 policy limits. He advised that his attorney had filed a petition seeking Taylor's appointment as personal representative of his wife's estate. However, he conditioned the settlement offer on the requirement that Infinity pay the estate's settlement amount within twenty-five days (by May 27, 1990), and the minor's claim by June 1, 1990. He agreed that the estate's funds could be paid to him personally or as personal representative. As an alternative, Taylor suggested that Infinity place the settlement funds in separate interest bearing accounts. Finally, he acknowledged that while it may take "special papers to be filed in court" to settle the minor's claim, he promised to work with the insurance company's lawyers to accomplish this.
On May 2, 1990, Taylor's attorney did file a petition seeking Taylor's appointment as personal representative of Marion Taylor's estate. The probate court entered an order appointing Taylor on May 14, 1990, but required Taylor to post a bond before it would issue letters of administration. The probate court issued letters of administration on June 20, 1990.
In response to the offer to settle the minor's claim, Infinity retained the services of an independent attorney on May 16, 1990, to seek the court's approval of the settlement on behalf of the minor child. This attorney attempted to contact Taylor by letter on May 24, 1990, to advise him that Infinity was willing to pay the policy limits upon the approval of the court and upon Taylor's appointment as personal representative of the estate. This letter was delayed in reaching Taylor due to an incorrect zip code.
On June 11, 1990, Taylor's attorney again wrote to Infinity, this time to advise that he was once again representing Taylor on the claims and that Taylor's prior *507 offer to settle was revoked due to Infinity's failure to pay the claims within the time prescribed in Taylor's written offer of settlement. The attorney then filed a wrongful death action on behalf of the estate as well as a personal injury claim on behalf of the minor. Taylor's attorney also wrote to Berges, advising him of the lawsuit and recommending that Berges pursue a bad faith claim against Infinity.
In August 1990, Taylor proposed that the parties stipulate to stay the tort action to allow the court to rule on Berges' bad faith claim. Taylor suggested that Berges could file a bad faith declaratory action against Infinity using an attorney paid for and approved by Taylor, and Infinity could agree that the bad faith case was a proper case for declaratory relief to be resolved by a jury. Taylor further suggested that Infinity should agree that if Berges prevailed on the bad faith claim, Infinity would pay the full verdict recovered in the subsequent tort trial, but if Infinity prevailed, Taylor would accept the policy limits and dismiss the tort claim. Although this proposal pre-dated Cunningham v. Standard Guaranty Insurance Co., 630 So.2d 179 (Fla.1994), because of the proposal's similarity to the procedure established in Cunningham, Taylor refers to the suggestion as a Cunningham proposal, a characterization that Infinity challenges. Infinity rejected the proposal, and the tort case proceeded to jury trial.
After an original verdict in favor of Infinity, in which the jury found that Taylor was bound by the offer of settlement, the trial court granted Taylor a new trial due to discovery violations by Infinity. Prior to the new trial, the trial court determined as a matter of law that there was no settlement between Taylor and Infinity because Taylor lacked the necessary authority to sign the required releases. Accordingly, the trial court granted Taylor's motion for summary judgment on Infinity's affirmative defense of settlement. Following the second trial, the jury returned a $911,400 verdict in favor of the estate, and a $500,000 decision for the minor.
Berges then filed his bad faith claim against Infinity. He prosecuted this claim under an agreement with Taylor, which acknowledged that Taylor was the real party in interest in any recovery. Berges employed attorneys selected by Taylor, and Taylor's approval was required before any settlement could be reached.
The bad faith claim was premised on three theories. First, Berges claimed that Infinity had exercised bad faith in not accepting the offer of settlement and completing the settlement as proposed by Taylor's letter of May 2, 1990. Second, Berges claimed that Infinity was guilty of bad faith in failing to timely notify him of the settlement offer and its time limitations. Finally, Berges suggested that Infinity's failure to accept the Cunningham proposal was indicative of bad faith.
The trial court granted Infinity's motion for summary judgment on the Cunningham issue but denied Infinity's motions for summary judgment on the other two theories. The case proceeded to a jury trial that resulted in a verdict in favor of Berges. Based on that verdict, the trial court entered a $1,893,066.41 amended final judgment in favor of Berges on November 1, 1999. On April 10, 2000, the trial court entered an order awarding Berges $616,200 in attorneys' fees. Infinity now appeals both the amended final judgment and the order awarding attorneys' fees. Berges cross-appeals the trial court's order granting summary judgment in favor of Infinity on the Cunningham issue.
We first address Infinity's challenge to the jury's determination that Infinity *508 acted in bad faith by failing to settle the lawsuit. The general rule is that an insurer may be guilty of bad faith for failure to settle a lawsuit if, in its handling of a claim against the insured, the insurer does not exercise "the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his or her own business." Boston Old Colony Inc. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980). In executing this good faith duty of diligence, "[t]he insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Id. The purpose of this rule is to protect the insured from an excess judgment that might result. Id.
Given the insurer's duty to protect its insured in settlement negotiations, the insurer has no obligation to settle unless the settlement offer would protect its insured. Put another way, the insurer cannot be guilty of bad faith for refusing to settle a claim where the proposed settlement would cause it to violate its duty to protect its insured. For this reason, an offer to settle that does not protect the insured or only partially settles the claim against the insured cannot be said to provide the insurer with a reasonable opportunity to settle the claim and, consequently, cannot subject the insurer to a bad faith claim for failure to settle. See Williams v. Infinity Ins. Co., 745 So.2d 573 (Fla. 5th DCA 1999) (concluding that an offer by only one of several claimants did not create an obligation to settle the claim).
Because our review of the record reveals that Taylor did not present Infinity with an offer that would protect its insured, Berges, we hold that Infinity cannot be guilty of bad faith for failing to settle. Taylor had neither been appointed personal representative of his deceased wife's estate, nor had he obtained court approval of a settlement on behalf of his minor daughter at the time he made his "offer." Since Infinity had no reasonable opportunity to settle the claim, Infinity could not have acted in bad faith as a matter of law. See Cruz v. Am. United Ins. Co., 580 So.2d 311 (Fla. 3d DCA 1991). We reverse the jury verdict because the trial court should have granted summary judgment on this issue.
The facts are not in dispute as to Taylor's status as of May 2, 1990, the day that Taylor delivered his "offer" to Infinity. He had not yet been appointed to serve either as personal representative of his wife's estate or as guardian of the property for his minor daughter. Section 768.20, Florida Statues (1990), specifies that a wrongful death action may only be brought by the court-appointed personal representative of the decedent's estate.[2] Only the personal representative is authorized to bind the estate and the survivors in the pre-suit settlement of a wrongful death claim. Williams v. Infinity Ins. Co., 745 So.2d 573. The insurer is not obligated to settle with anyone other than the personal representative. Id. The duty of the insurer is to the insured, not the claimant. Accordingly, the insurer should not attempt to settle with one who cannot deliver the required release. Erhardt v. Duff, 729 So.2d 529 (Fla. 4th DCA 1999).
Since Taylor was not the duly appointed personal representative as of May 2, his "offer" was merely an expression of his *509 intent to settle once he became authorized to make an offer. As of May 2, he could neither sign the release nor assure Infinity that if it, in fact, performed in any way, all of the claimants would be bound by the offer.[3] Accordingly, Infinity did not have a "reasonable opportunity" to settle the wrongful death claim as of that date. That "reasonable opportunity" would not arise until the court appointed Taylor as personal representative and Infinity became aware of that fact.
Although the probate court did appoint Taylor personal representative on May 14, 1990, there is nothing in the record to show that Taylor advised Infinity of that appointment, which would have transformed his "offer" into a valid "opportunity" to settle. Furthermore, since the order appointing Taylor required that he post a bond, the probate court did not actually issue letters of administration to Taylor until June 20, nine days after Taylor had revoked his "offer." Whether Taylor had the requisite authority to settle prior to issuance of the letters of administration is a question we need not address since it is undisputed that as of the time Taylor revoked his "offer" on June 11, 1990, Infinity was without notice that Taylor was authorized to settle the claim. Accordingly, Infinity did not have a reasonable opportunity to accept a valid offer to settle the claim and, as a matter of law, did not act in bad faith.
Similarly, Taylor was without authority to bind his minor daughter on her claim for personal injuries. Section 744.301, Florida Statutes (1990), designates a parent as the natural guardian of a minor and authorizes the natural guardian to settle a claim on behalf of the minor child when the amount of the settlement is less than $5,000.[4] However, section 744.387(2), Florida Statutes (1990), specifically requires a court-appointed guardian to settle any claim in excess of $5,000.[5] Section 744.387(1), Florida Statutes (1990), further specifies that the court must determine whether such a settlement is in the best interest of the minor.[6] These requirements *510 apply to pre-suit settlements as well as to those made after litigation has commenced. Sullivan v. Dep't of Transp., 595 So.2d 219 (Fla. 2d DCA 1992). Again, Taylor was without authority to make a valid offer to settle. He could not bind his daughter to the settlement without the court's prior approval, and he revoked his intent to settle prior to being appointed guardian and prior to the requisite court approval of the settlement offer. Infinity's failure to accept the "offer" cannot rise to the level of bad faith because Infinity simply did not have a reasonable opportunity to settle the claim. Accordingly, we hold that the trial court erred in failing to grant Infinity's motion for summary judgment on the failure to settle theory.
Similarly, the trial court erred in denying Infinity's motion for summary judgment on the failure to notify theory. First, if there was no valid opportunity to settle, Infinity could not have acted in bad faith by failing to notify Berges of the "offer." Additionally, since the "offer" contemplated settling within policy limits (i.e. the settlement would have included a release without any obligation to Berges), the duty to involve Berges in the discussions did not apply. See A.W. Huss Co. v. Cont'l Cas. Co., 735 F.2d 246 (7th Cir. 1984); Shuster v. S. Broward Hosp. Dist. Physicians' Prof. Liab. Ins. Trust, 591 So.2d 174 (Fla.1992). Accordingly, the trial court should have granted the motion for summary judgment in favor of Infinity.
Having determined as a matter of law that there was no bad faith, we necessarily must conclude there was no basis upon which to award Berges attorneys' fees. Accordingly, we also reverse the order for fees.
Finally, the trial court correctly granted Infinity's motion for summary judgment on the Cunningham issue. Although Infinity disputes whether this was a true Cunningham proposal, we need not resolve that issue. Cunningham was not decided until after this proposal was rejected. At the time Taylor made his offer, the law required that an excess judgment exist before a bad faith claim could be brought. See Dixie Ins. Co. v. Gaffney, 582 So.2d 64 (Fla. 1st DCA 1991).[7] Accordingly, it was not bad faith on the part of Infinity to follow the law as it existed at that time and reject the proposal. Summary judgment was entered properly, and we affirm as to that issue.
We reverse the amended final judgment and the order awarding attorneys' fees and remand with instructions to enter a final judgment in favor of Infinity.
Affirmed in part, reversed in part, and remanded.
PARKER, A.C.J., and CAMPBELL, MONTEREY, (Senior) Judge, Concur.
NOTES
[1] Cunningham v. Standard Guaranty Insurance Co., 630 So.2d 179 (Fla.1994).
[2] "The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death...."
[3] The claimants would be the survivors as defined by section 768.18, Florida Statues (1990), and would include Taylor as the surviving spouse along with the two minor children of the decedent.
[4] 744.301 Natural guardians.

(1) The mother and father jointly are natural guardians of their own children and of their adopted children, during minority. If one parent dies, the natural guardianship shall pass to the surviving parent....
(2) The natural guardian or guardians are authorized, on behalf of any of their minor children, to settle and consummate a settlement of any claim or cause of action accruing to any of their minor children for damages to the person or property of any said minor children and to collect, receive, manage, and dispose of the proceeds of any such settlement and of any other real or personal property distributed from an estate or trust or proceeds from a life insurance policy to, or otherwise accruing to the benefit of, the child during minority, when the amount involved in any instance does not exceed $5,000, without appointment, authority, or bond.
[5] 744.387 Settlement of claims.

(2) In the same manner as provided in subsection (1) or as authorized by s. 744.301, the natural guardians or guardian of a minor may settle any claim by or on behalf of a minor that does not exceed $5,000, without bond. A legal guardianship shall be required when the amount of the net settlement to the ward exceeds $5,000.
[6] 744.387 Settlement of claims.

(1) When a settlement of any claim by or against the guardian, whether arising as a result of personal injury or otherwise, and whether arising before or after appointment of a guardian is proposed ... on petition by the guardian of the property stating the facts of the claim, question or dispute and the proposed settlement, and on any evidence that is introduced, the court may enter an order authorizing the settlement if satisfied that the settlement will be for the best interest of the ward.
[7] Berges argues that this case and other cases cited by Infinity in support of its argument were decided after Infinity rejected the proposal in August of 1990. Berges suggests that Infinity could not have relied on these decisions, and thus acted in bad faith in not accepting a procedure that was later approved in Cunningham. We reject this argument. If the court in Dixie and the other cases determined this to be the status of the law in and after 1991, we are satisfied that Infinity's refusal of the proposal was not an act of bad faith.