786 So.2d 1247 (2001)
Brittany and Marquis WIGGINS, Minors, Appellants,
v.
The ESTATE OF April Brown WRIGHT, Appellee.
No. 5D00-2878.
District Court of Appeal of Florida, Fifth District.
June 15, 2001.
*1248 Linda L. Schwichtenberg of Linda L. Schwichtenberg, P.A., Orlando, for Appellants.
Jackson O. Brownlee, of Beusse, Brownlee, Bowdoin & Wolter, P.A., Orlando, for Appellee.
HARRIS, J.
Walter C. Wright was the surviving spouse of April Wright. They had two children. April also had two minor children by a previous marriage. While Walter was out of town on business (he was a truck driver), April died while admitted to Orlando Regional Medical Center. When Walter returned, he discovered that an autopsy had been waived by other family members. As "potential personal representative" of his wife's estate, he retained attorney Nichols on a contingency fee basis Once he was appointed personal representative, he signed a new retainer agreement individually and as the parent of his two minor children and as personal representative of the estate. The other minor children retained Schwichtenberg as separate counsel.
Through his efforts in obtaining an autopsy and negotiations with the hospital, Nichols was able to settle the malpractice claim for over a million dollars. The court and all parties, including the attorney for the minor children of the deceased's first marriage, approved the settlement. Nichols was awarded his fee pursuant to his contingency contract by the court. Schwichtenberg also applied for a fee pursuant to her contingency contract with the other minor children, arguing, in effect, that a portion of the fee earned by Nichols should be used to satisfy her clients' obligation to her. Although the court determined that she was entitled to a fee, it held such fee should come from her clients and not the estate and that she should not share in Nichols' fee. This appeal followed and we affirm.
Appellant takes the position that Nichols is not entitled to any fee out of her clients' share of the estate because he did not represent them. But Nichols is taking nothing from any portion of the estate that Schwichtenberg's clients are entitled to share. Her clients are entitled to share only in the assets of the estate after legal expenses have been paid.
Nichols represented the estate and was hired by the only one having the authority to bind the estate: the personal representative. Through Nichols' efforts, and through his efforts alone, the estate was infused with over a million dollars. The estate had an obligation to pay Nichols for his successful efforts in obtaining the settlement pursuant to its contract. The beneficiaries of the estate, consisting of the surviving spouse and the four children, were entitled to share in the estate only after all estate debts were paid.
Although Nichols met the conditions for his fee under his contingency contract with the estate as soon as the settlement was approved and the proceeds were paid over to the estate, as is not uncommon in such cases, he continued his representation by proposing a distribution plan for the estate proceeds to the court. There was no additional fee contemplated for this service.[1] *1249 The court rejected the plan offered by Nichols and instead ordered that the estate proceeds be divided equally among all beneficiaries.[2]
Appellant relies most heavily on In re Estate of Catapane, 759 So.2d 9 (Fla. 4th DCA 2000). Under facts similar to the case at issue, the Fourth District held that the estate's attorney who had successfully recovered in a wrongful death action was not entitled to his full contingency fee because of the conflict among claimants to the estate's proceeds. Because we find that Nichols represented the estate, and not the individual beneficiaries thereto, in handling the wrongful death claim, we agree with the trial court that Nichols earned his contingency fee before any potential conflict arose and is indeed entitled to the total fee agreed to by the estate. We also agree with the lower court that although Schwichtenberg performed a valuable service to her clients by assuring them a greater share of the distribution than they would have otherwise received, this was a service personal to such beneficiaries and should be paid for by them. We believe that is the intent of section 768.26, Florida Statutes:
Attorneys' fees and other expenses of litigation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards.
Clearly this statute contemplates that the expenses of litigation shall be paid before there is a distribution to anyone and that services performed for an individual beneficiary must be paid by that beneficiary. That is what the lower court ruled and we affirm.
THOMPSON, C.J., concurs.
SAWAYA, J., dissents, with opinion.
SAWAYA, J., dissenting.
The nature of wrongful death actions and the particular facts of this case compel me to respectfully dissent.
Under the Wrongful Death Act [the "Act"], a wrongful death action may be brought only by the personal representative for the benefit of all of the decedent's survivors and estate. § 768.20, Fla.Stat. (1999); Williams v. Infinity Ins. Co., 745 So.2d 573 (Fla. 5th DCA 1999); Continental Nat'l Bank v. Brill, 636 So.2d 782 (Fla. 3d DCA 1994). As the courts have repeatedly held, the purpose of requiring the action to be brought by the personal representative is to eliminate the possibility of a multiplicity of suits against the wrongdoer, to eliminate the potential for competing beneficiaries to race to judgment, and to prevent preferential treatment of one or more beneficiaries in the disposition of their claims. See Hess v. Hess, 758 So.2d 1203 (Fla. 4th DCA 2000); Williams; Funchess v. Gulf Stream Apartments of *1250 Broward County, Inc., 611 So.2d 43 (Fla. 4th DCA 1992); see also Ding v. Jones, 667 So.2d 894, 897 (Fla. 2d DCA 1996) ("It is also clear that the purpose of this provision in the current version of the Wrongful Death Act enacted in 1972, was to eliminate the multiplicity of suits that resulted from each survivor bringing an independent action under the predecessor act.").
In order to fulfill this responsibility, the personal representative may hire lawyers to represent him or her in the action and enter into settlement agreements on behalf of the estate and survivors. Pearson v. DeLamerens, 656 So.2d 217 (Fla. 3d DCA 1995). Despite the responsibilities and powers of the personal representative, the personal representative is a nominal party to the action; the estate and survivors are the real parties in interest. Morgan v. American Bankers Life Assur. Co. of Florida, 605 So.2d 104, 104 (Fla. 3d DCA 1992) ("At the outset, we recognize that under substantive law the decedent's survivors are the real parties in interest. Nonetheless, the Legislature has mandated that a decedent's personal representative is the party `who shall recover for the benefit of the decedent's survivors and estate all damages ....'") (quoting § 768.20, Fla. Stat. (1991)); see also City of Pompano Beach v. T.H.E. Ins. Co., 709 So.2d 603, 605 (Fla. 4th DCA 1998) ("They are brought on behalf of the survivors, not to recover for injuries to the deceased, but to recover for statutorily identified losses the survivors have suffered directly as a result of the death.") (citation omitted); Ding, 667 So.2d at 895 ("Even though a wrongful death action must be brought by the personal representative of the estate as a nominal party on behalf of the surviving spouse, the real party in interest is the surviving spouse.").
The personal nature of a survivor's cause of action has been consistently recognized by the Florida courts.[1]See, e.g., Ding, 667 So.2d at 898 (`"Accordingly, the Wrongful Death Act creates an independent cause of action in the statutory beneficiaries....'") (quoting Rimer v. Safecare Health Corp., 591 So.2d 232, 235 (Fla. 4th DCA 1991), approved, 620 So.2d 161 (Fla.1993)). Moreover, I must emphasize the Florida Supreme Court's continued adherence to its determination that the Act creates an independent cause of action in the statutory beneficiaries. Nissan Motor Co. v. Phlieger, 508 So.2d 713 (Fla. 1987); Variety Children's Hosp. v. Perkins, 445 So.2d 1010 (Fla.1983). This has been true throughout the history of the Act in Florida, despite the variety of revisions and re-enactments it has undergone. See, e.g., Martin v. United Sec. Servs., Inc., 314 So.2d 765 (Fla.1975); Stokes v. Liberty Mut. Ins. Co., 213 So.2d 695 (Fla. 1968); Shiver v. Sessions, 80 So.2d 905 (Fla.1955); Epps v. Railway Express Agency, 40 So.2d 131 (Fla.1949); Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213 (1945); Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631 (1933); Florida Cent. & P.R. Co. v. Foxworth, 41 Fla. 1, 25 So. 338 (1899); Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894).
Thus the personal representative of a decedent's estate is a fiduciary who is required to use the authority conferred upon him or her for the best interests of the *1251 interested persons who are the survivors entitled to recover under the Act. § 733.602(1), Fla.Stat. (1997); Guadalupe v. Peterson, 779 So.2d 494 (Fla. 2d DCA 2000); In re Estate of Wiggins, 729 So.2d 523 (Fla. 4th DCA 1999); Pearson. Where the personal representative receives a nonspecific settlement offer in a wrongful death action, he or she is obligated to apportion the proceeds between the estate and the survivors in a reasonable and equitable manner. See Guadalupe; Wiggins; Continental Nat'l Bank, 636 So.2d at 784; University Med. Ctr. v. Zeiler, 625 So.2d 120 (Fla. 5th DCA 1993). When asked to apportion the proceeds of a wrongful death settlement, a court must look to the statute to identify both the "survivors" and the recoverable damages. See §§ 768.18(1), 768.21, Fla.Stat. (1999); Hess. In fashioning a "reasonable and equitable" distribution, a court might be called upon to place a value on the intangible losses of various survivors. Hess.
When a lump sum settlement is reached and distribution of those proceeds must be determined, a conflict of interest may arise when the personal representative, the nominal party in interest, is also a survivor entitled to share in those proceeds with other survivors who are the real parties in interest and whose cause of action is personal unto them. See Continental Nat'l Bank, 636 So.2d at 784 ("Where, as in this case, the personal representative is also a survivor of the decedent and therefore has a personal stake in the allocation of proceeds between the survivors and the estate, we conclude that the personal representative may have an interest adverse to the estate."); see also In re Estate of Catapane, 759 So.2d 9 (Fla. 4th DCA 2000) (holding that a conflict of interest occurred when the personal representative also sought recovery as a survivor). In these situations, the trial court may appoint an individual without self-interest as administrator ad litem[2] who shall equitably represent both the estate and the survivors in the wrongful death proceeding which allocates settlement proceeds or in any proceeding which reviews that allocation.
In my view, the facts of this case reveal that a conflict existed at the time the settlement funds were recovered. Shortly after the decedent's death, Schwichtenberg was retained by Wiggins, the decedent's former husband, to represent the two minor children born to him and the decedent during their prior marriage. Around the same time, Nichols was retained to represent Wright, his two children and the estate. Schwichtenberg made her representation known to Nichols early on and they regularly exchanged correspondence about the potential medical malpractice action the estate had against the decedent's medical care provider. Moreover, while Nichols' contract specifically provided that he represented the decedent's estate and Wright and his two children, individually, Schwichtenberg's contract specifically provided that she represented the Wiggins children. Nichols and Schwichtenberg also exchanged correspondence about the settlement, and Schwichtenberg, on behalf of her clients, approved the settlement amount.
However, when it came time to apportion the settlement proceeds, the personal *1252 representative, Wright, who had allegedly been having marital problems with the decedent prior to her death, proposed a settlement scheme that gave 37% to himself, 22.82% and 20.8% to his two minor children, and 10.61% and 8.77% to the Wiggins children. Thus this scheme allotted 80.62% of the settlement amount to Wright and his two children, while the Wiggins children were allotted less than 20%. Nothing was allotted to the decedent's estate.
Schwichtenberg objected to this scheme and a hearing was held. Nichols continued to represent Wright and his two children and Schwichtenberg continued to represent Wiggins and his two minor children. The settlement scheme proposed by Wright, through the representation of Nichols, was rejected by the trial court which entered an order specifically finding:
The petitioner [Wright] proposed an apportionment that would result in his receiving the largest share of the settlement, then his natural children and finally his stepchildren. It was quite evident by the testimony given during the hearing that petitioner and his wife, the decedent, was not on the best of terms and she had even contemplated leaving [the] marriage after the birth of their child.
In reviewing a settlement, or the apportionment thereof, the Court should consider whether it is reasonable and equitable. The report of Frederick A. Raffa, PH.D., a consulting economist, is based largely on the decedent having a remaining life expectancy of 44.99 years, with her earning [sic] increasing over her remaining life time [sic]. The report assumes that she would still be married to the petitioner. Since it is clear [from] the testimony that there was a great probability that this marriage was near an end, the Court cannot use the report of Dr. Raffa in making the apportionment in this case.
The trial court then ordered that the settlement proceeds be apportioned with Wright and the four minors receiving 20% each. Wright appealed the order to this court which affirmed the order and the apportionment. See Wright v. Wiggins, 751 So.2d 598 (Fla. 5th DCA 2000). Thus, through the representation and efforts of Schwichtenberg, her clients recovered approximately twice the amount proposed by Wright.
As I have indicated, in my opinion, these facts establish that a conflict of interest developed over the allotment of the proceeds of the settlement amount. I, therefore, believe that the decisions in Perris v. Estate of Perris, 764 So.2d 870 (Fla. 4th DCA 2000) and Catapane should control the disposition of the issue concerning the allotment of attorneys fees between Nichols and Schwichtenberg. Application of the formula adopted in Catapane would obviously allot the larger portion of the fee to Nichols, which he so rightly deserves. Equally important, this formula would allow Schwichtenberg to share in a portion of the fee which, in my view, she deserves.
NOTES
[1] Perhaps Nichols should have withdrawn from representation of the estate after he was successful in the malpractice action because there was a potential conflict between the personal representative (also a beneficiary) and the other beneficiaries as to how the proceeds from the settlement should be distributed. But even if he had, the estate would have needed continued representation in determining the amount of distribution that should go to each beneficiary and then closing out the estate. If an attorney provides services to the estate, even if it is determined that the claims of the beneficiaries are unequal, should not the attorney receive his full fee from the estate? In any event, Nichols' efforts were made in good faith and since he was not awarded a separate fee for these services, his additional representation seems irrelevant to this appeal.
[2] The plan submitted by Nichols and supported by expert testimony was based on the age of the beneficiaries and assumed that the younger the child, the greater the damages the minor would suffer as a consequence of the wrongful death of the mother.
[1] Provisions of the Act also recognize that each survivor has a personal cause of action. Section 768.21(1) provides, "Each survivor may recover ...." and section 768.21(2) provides that "[t]he surviving spouse may also recover...." Lending further credence to the personal nature of the survivor's claims is the provision of section 768.20 which states, "A defense that would bar or reduce a survivor's recovery if she or he were the plaintiff may be asserted against the survivor, but shall not affect the recovery of any other survivor." Finally, section 768.22 provides, "The amounts awarded to each survivor and to the estate shall be stated separately...."
[2] Rule 5.120(a), Florida Probate Rules, permits the appointment of an administrator ad litem in the following circumstances:

When it is necessary that the estate of a decedent ... be represented in any probate... proceeding and there is no personal representative of the estate ..., or the personal representative ... is or may be interested adversely to the estate ..., or is enforcing the personal representative's ... own debt or claim against the estate ..., or the necessity arises otherwise, the court may appoint an administrator ad litem ... without bond or notice for that particular proceeding.