850 So.2d 444 (2003)
Brittany WIGGINS, etc., et al., Petitioners,
v.
ESTATE OF April Brown WRIGHT, Respondent.
No. SC01-1713.
Supreme Court of Florida.
May 22, 2003.
Rehearing Denied July 16, 2003.
*445 Linda L. Schwichtenberg, Orlando, FL, for Petitioners.
Jackson O. Brownlee of Beusse, Brownlee, Bowdoin & Wolter, P.A., Orlando, FL, for Respondent.
ANSTEAD, C.J.
We have for review Wiggins v. Estate of Wright, 786 So.2d 1247 (Fla. 5th DCA 2001), which expressly and directly conflicts with the decision in In re Estate of Catapane, 759 So.2d 9 (Fla. 4th DCA 2000). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. Because we agree with Judge Sawaya's dissenting opinion in Wiggins concerning the method of allocating attorneys' fees to the attorneys representing separate beneficiaries in a wrongful death action, we quash the decision of the Fifth District Court of Appeal.

PROCEEDINGS TO DATE
Upon April Wright's death, she was survived by her spouse, Walter C. Wright, two minor children from that marriage, and her two minor children from a previous marriage. See Wiggins v. Estate of Wright, 786 So.2d 1247, 1248 (Fla. 5th DCA 2001). As the "potential personal representative" of April's estate, Walter retained attorney Jack Nichols on a contingency fee basis to institute a wrongful death claim on behalf of April's survivors and her estate, against the hospital where April died. See id. Once he was appointed as the personal representative, Walter signed a new retainer agreement with Nichols, both in his capacity as the parent of his two minor children who survived April's death, and as the surviving spouse and personal representative of April's estate. See id. At the same time, however, April's two other surviving minor children from her prior marriage retained attorney Linda L. Schwichtenberg as their counsel to look after their interests as surviving beneficiaries in the wrongful death claim. See id.
Thereafter, Nichols negotiated a settlement of the estate's claim with the hospital, and the settlement was approved by the trial court and all parties, including the two minor children from the prior marriage represented by Schwichtenberg. See id. After the settlement was approved and paid by the hospital, Nichols proposed a distribution plan for the proceeds to be distributed that favored Walter Wright and his two children, and did not compensate the children from the prior marriage on a par with the other children. See id. Schwichtenberg, acting on behalf of her clients, opposed this plan. Upon hearing, the trial court rejected Nichols' plan, and instead ordered that the survivors receive equal shares of the settlement proceeds. See id. at 1249.
*446 Thereafter, Nichols sought and the trial court awarded Nichols a full fee based upon his agreement with Wright and calculated as a percentage of the entire settlement paid to the estate for all the beneficiaries. See id. at 1248. Schwichtenberg also applied to the trial court for a fee under her contingency contract with the children from the prior marriage, claiming that a portion of the fee awarded to Nichols should be awarded to her to satisfy her clients' obligations to pay her. See id. However, the trial court determined that Schwichtenberg's fee should come solely from her clients out of their net share of the proceeds as reduced by the payment of Nichols' fee. See id.
On review of the trial court's decision on attorney's fees, the Fifth District Court of Appeal affirmed the trial court's ruling, holding:
Because we find that Nichols represented the estate, and not the individual beneficiaries thereto, in handling the wrongful death claim, we agree with the trial court that Nichols earned his contingency fee before any potential conflict arose and is indeed entitled to the total fee agreed to by the estate. We also agree with the lower court that although Schwichtenberg performed a valuable service to her clients by assuring them a greater share of the distribution than they would have otherwise received, this was a service personal to such beneficiaries and should be paid for by them. We believe that is the intent of section 768.26, Florida Statutes:
Attorneys' fees and other expenses of litigation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards.
Clearly this statute contemplates that the expenses of litigation shall be paid before there is a distribution to anyone and that services performed for an individual beneficiary must be paid by that beneficiary.
Id. at 1249. The district court rejected the claim of Schwichtenberg and her clients that they should not have to pay fees to both the estate lawyer and their own lawyer in the manner determined by the trial court. Judge Sawaya dissented, pointing out that Schwichtenberg had continuously represented her clients' interests in the wrongful death action, and had successfully objected to Nichols' proposed settlement scheme. See Wiggins, 786 So.2d at 1252 (Sawaya, J., dissenting).
Following the Fifth District's affirmance, Schwichtenberg's clients, the petitioners, now seek review in this Court, citing conflict between the Fifth District's decision and cases decided by the Fourth District that were relied upon by Judge Sawaya in his dissent.

WRONGFUL DEATH CLAIMS
Florida's wrongful death statute focuses on the loss suffered by survivors of the decedent and creates a separate entitlement to damages for each survivor. However, the survivors cannot bring separate legal actions. Rather, by statute, the personal representative is the only party with standing to bring a wrongful death suit on behalf of the estate and the survivors. See § 768.20, Fla. Stat. (1999). Under the legal procedure set out in the wrongful death statute, all survivors and claimants are required to participate in a single legal action to be filed by the estate on behalf of all the survivors. Upon trial, damages are to be apportioned to each survivor in the verdict form.

*447 Catapane

In the case of In re Estate of Catapane, 759 So.2d 9 (Fla. 4th DCA 2000), the decedent's survivors in a wrongful death action included his wife, who was appointed the personal representative, and a daughter, Nadine, from a prior marriage. See id. at 10. The wife hired counsel to pursue a wrongful death claim for the estate and all of the survivors, while the surviving daughter, Nadine, hired separate counsel to represent her interests in the claim. See id. The law firms each had a one-third contingency fee agreement with their clients that provided for attorney's fees in the amount of one-third of any recovery obtained for the client. See id.
When the uninsured motorist insurer offered its limits of $100,000 and the liability insurer offered its limits of $30,000 to settle the claim, it became unnecessary for an action to be prosecuted further. See id. Thereafter, the trial court determined an apportionment of the recovery so that the wife would get $35,000 and Nadine would receive $95,000 of the settlement proceeds. See id. The trial court further determined that the two separate law firms involved would each receive one-third of their clients' separate recoveries, respectively, based upon their individual fee agreements. See id.
The wife's attorneys appealed, claiming that as counsel for the estate, they were entitled to their full one-third contingency fee on the entire settlement paid to the estate, including the recovery for Nadine. See id. Upon review, the Fourth District agreed in part with this claim, but held that the wife's counsel's fee recovery must be adjusted to allow a share of the fee for the daughter's counsel:
We reverse and remand for the trial court to reconsider the award of attorney's fees to David & French consistent with our holding that they were entitled, as counsel for the personal representative, to be compensated out of the total recovery of $130,000. Because of their conflict of interest on damages, however, their fee which will come out of Nadine's portion of the recovery shall be reduced by an amount necessary to compensate Lytal, Reiter for representing Nadine on damages. That fee would be small compared to David & French's fee, and the total of Nadine's fees cannot exceed a fee authorized by rule 4-1.5.
See id. at 11-12 (footnotes omitted). The district court sent the case back to the trial court for a hearing to determine fees based upon these instructions.
We agree with the Fourth District's Catapane analysis, and conclude that the Wiggins opinion may require the non-personal representative survivors to pay a fee in excess of those allowed by rule 4-1.5 of the Rules Regulating the Florida Bar[1] and *448 ignores the potential conflict of interest that is created when separate survivors hire separate counsel to prosecute a claim for the damages that each is entitled to under the statute. See § 768.22, Fla. Stat. (1999) (damages for each survivor to be stated separately). On the other hand, the Fourth District's attorneys' fees scheme as set forth in Catapane acknowledges the conflict and allocates attorneys' fees from the estate (and ultimately all parties) once, and distributes them proportionately by the amount of work that the attorneys do on (1) the lawsuit brought on behalf of the estate, and (2) the apportionment proceedings.[2]
In many instances the survivors entitled to compensation in a wrongful death action may be in agreement both as to prosecuting a wrongful death claim, and in the distribution of any recovery. When this is the case, this procedure will work well, especially when all of the survivors have a commonality of interest and a single attorney can represent those interests. This may often be the case, for example, when a parent-spouse is killed and the surviving spouse and children are represented by the same attorney.
However, when the survivors do not have a commonality of interest, this procedure may also sometimes produce conflict about the resolution of the claim, apportionment of damages to the survivors, and the award of attorneys' fees. Under the wrongful death act, survivors of the deceased *449 are entitled to damages caused to each of them by the wrongful loss of the decedent. Further, regardless of whether the court action must be filed in the name of the estate, survivors are still entitled to be represented by counsel of their choice.
The survivors here were represented by separate attorneys. Nichols represented the estate and three of the survivors, while Schwichtenberg represented two of the survivors. Based upon the contingent fee agreements with their attorneys, each of those survivors could reasonably contemplate the payment of a fee out of their respective recoveries. But they could hardly contemplate having to pay a "double" fee, due the first time when the gross settlement amount was received, and a second time when their actual portion of the recovery was determined.
Ordinarily, a single attorney simply could not fairly represent, absent an express agreement, multiple survivors' competing interests. In addition, a claim could not be properly evaluated without an evaluation of its separate components, i.e., the individual claims of the surviving, and usually competing, beneficiaries. Indeed, that is what a jury would have to do if there was no settlement.
In Wiggins, the Fifth District concluded that "Nichols earned his contingency fee before any potential conflict arose." 786 So.2d at 1249. However, it was apparent from the outset that all of the survivors were entitled to compensation, including the two children from the previous marriage represented by Schwichtenberg, and their respective claims evaluated prior to settlement. Yet Nichols represented the surviving and competing survivors from the outset without any express agreement. While Nichols obviously acted in good faith to secure the largest possible total settlement, the potential for conflict between the competing interests of the individual beneficiaries was ever present.
In this case it appears that both attorneys rendered services to the survivors. Further, while it is unclear what part attorney Schwichtenberg played in securing the overall settlement, it is apparent that she rendered valuable services to her clients in securing a greater portion of the gross settlement for their benefit. In his dissent, Judge Sawaya noted that due in large part to Schwichtenberg's advocacy, the trial court rejected Nichols' proposal for distribution and ordered that the decedent's four children receive twenty percent each, a decision which Wright unsuccessfully appealed.[3]See 786 So.2d at 1252 (Sawaya, J., dissenting). Judge Sawaya concluded:
[T]hrough the representation and efforts of Schwichtenberg, her clients recovered approximately twice the amount proposed by Wright.
As I have indicated, in my opinion, these facts establish that a conflict of interest developed over the allotment of the proceeds of the settlement amount. I, therefore, believe that the decisions in Perris v. Estate of Perris, 764 So.2d 870 (Fla. 4th DCA 2000) and [In re Estate of Catapane, 759 So.2d 9 (Fla. 4th DCA 2000)] should control the disposition of the issue concerning the allotment of attorneys fees between Nichols and Schwichtenberg. Application of the formula adopted in Catapane would obviously allot the larger portion of the fee to Nichols, which he so rightly deserves. Equally important, this formula would allow Schwichtenberg to share in a portion of the fee which, in my view, she deserves.
*450 Id. (Sawaya, J., dissenting). While Schwichtenberg was advocating for her clients, it also appears that, once the settlement for the estate was secured, Nichols openly advocated only for Wright, as well as Wright's two children, in the division of the settlement. Because Nichols could not have represented the other survivors in the apportionment proceedings without their consent pursuant to Rule Regulating the Florida Bar 4-1.7(a), he would not be entitled to a fee on their portions of the recovery. On the other hand, if Schwichtenberg's services were limited to securing an increase in her clients' recovery over that proposed by Nichols, then her fee may have to be adjusted accordingly.
Further, neither Nichols nor Schwichtenberg is entitled to receive payment that exceeds the maximum contingent fee permitted by Rule Regulating the Florida Bar 4-1.5. As the Fourth District noted in Catapane, attorneys' fees may exceed the schedule in rule 4-1.5 only with prior court approval. See R. Regulating Fla. Bar 4-1.5(f); Catapane, 759 So.2d at 12 n. 3. As noted by the Fourth District in Catapane:
If David & French were allowed the maximum fee under rule 4-1.5 while their conflict of interest required Nadine to hire her own counsel on damages, Nadine would be exposed to having to pay a fee in excess of that allowed by rule 4-15. Because David & French could not represent Nadine on damages, they are not entitled to their full fee on Nadine's portion of the recovery.
759 So.2d at 11. See R. Regulating Fla. Bar 4-1.7. On the other hand, it may well be that Nichols is entitled to a fee larger than just a percentage of the recovery apportioned to his client-survivors if it can be demonstrated that his efforts played a greater role in securing the total settlement.

CONCLUSION
When survivors have competing claims, and are represented by separate attorneys, awarding attorneys' fees from a wrongful death suit in a manner commensurate with the attorneys' work properly provides for proportional payment of attorneys' fees by all survivors, out of their respective awards. For example, if there are two competing survivors represented by separate attorneys throughout the litigation who successfully prosecute a claim to judgment, the fees should ordinarily be awarded out of the respective recoveries. This will always be subject to the caveat that where it can be demonstrated that one attorney played a greater role in securing the total award, a larger fee may be proper. In no instance, however, should a survivor be penalized for hiring separate counsel by having to pay a fee for recovery of the same amount twice.
We agree with and approve of the Catapane method of allocating fees, whereby a trial court determines the attorneys' fee awards by compensating the personal representative's attorney out of the total settlement proceeds, reduced by the amount necessary to reasonably compensate the other survivors' attorneys for their services in representing those survivors in the proceedings.
Accordingly, we quash the Fifth District's decision in Wiggins, and approve of the Fourth District's holding in Catapane. We remand this cause to the district court for further proceedings in accord herewith.
It is so ordered.
PARIENTE, LEWIS, QUINCE and CANTERO, JJ., and SHAW, Senior Justice, concur.
WELLS, J., concurs with an opinion.
WELLS, J., concurring.
I concur with the majority opinion. I write to express my belief that this decision *451 is required by the Rules Regulating the Florida Bar.
It is fundamental to a proper adherence to rule 4.1-5 that when an estate pays a contingency fee, the maximum contingency fee paid out of funds recovered by the estate be in accord with rule 4.1-5(f). This includes funds which flow through the estate to the individual beneficiaries. Therefore, regardless of how many beneficiaries there are or who is the beneficiary of the funds which can be recovered by an estate for wrongful death, the contingency fee amount agreed to by the estate becomes the fund for the payment of all attorney fees which any attorney is entitled to receive regardless of whether the attorney represents the estate or an individual beneficiary or both. In sum, the percentage amounts set out in rule 4.1-5 are the cap for an attorney-fee fund out of which the total fees of the attorney for the estate and the attorneys for the beneficiaries are to be paid for services rendered in respect to obtaining a wrongful death claim recovery.
The allocation, then, of the amount which each beneficiary is to bear in fees should usually be calculated on a pro-rata basis formula of the total amount of recovery by the estate divided by the amount recovered for the individual beneficiary after deducting from the total amount of the estate's recovery the attorney-fee fund plus costs.[4] However, there are a variety of cases in which a simple pro-rata division of fees among beneficiaries would be inequitable. Thus, the trial court has the authority to divide the burden of the attorney fees among the beneficiaries other than by a straight calculation of the amount recovered by the estate divided by the amount for the individual beneficiary when there is record support for such a division. For example, there are instances in which counsel for one beneficiary provides a service which assists all beneficiaries in enhancing a recovery or assists a beneficiary who is not that attorney's client in enhancing that beneficiary's recovery and the trial court must have the flexibility of having all beneficiaries pay their fair share for those services.
In respect to the division of attorney fees among the attorneys, the trial court should do this using the factors set out in rule 4-1.5(b)-(c). In making this apportionment, the trial court is to take into consideration as a significant factor the time, skill, and effort of the attorney or attorneys in the obtaining of the recovery of the gross amount recovered for the estate, including all beneficiaries of the estate. However, in the variety of situations in wrongful death cases, trial judges have the latitude to consider many other factors. There are cases in which the time, skill, and effort expended in the division of the wrongful death funds, once recovered by the estate, are as time consuming and as legally complicated or more so than the recovery of the total amount for the estate. This often happens when the amount which can be recovered from the tortfeasors is limited to an insurance policy which has limits that are low in comparison to the wrongful death damages. In such cases, in determining the division of attorney fees among the attorneys, the trial judge should give weight to the time, skill, and complication of the division of the estate funds as well as weight to the obtaining of the gross amount for the estate.
NOTES
[1] Rule 4-1.5 provides in part:

(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
....
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint, or within 10 days of execution of a contract for division of fees when new counsel is engaged. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and The Florida Bar. Counsel may proceed with representation of the client pending court approval.
[2] In Perris v. Estate of Perris, 764 So.2d 870 (Fla. 4th DCA 2000), the Fourth District followed its holding in Catapane.
[3] See Wright v. Wiggins, 751 So.2d 598 (Fla. 5th DCA 2000).
[4] Costs are also often complicated in that some beneficiaries are required to expend costs to prove individual claims, and there are disputes as to whether those costs were reasonable and necessary for the pursuit of their individual claims.