947 So.2d 499 (2006)
Jorge Eliezer GARCES, as Co-Personal Representative of the Estate of Silvana Lorena Lopez, deceased, Robin Rosenblum, and Philip M. Gerson, Appellants,
v.
Eduardo MONTANO, as Co-Personal Representative of the Estate of Silvana Lorena Lopez, deceased, and Podhurst Orseck, P.A., Appellees.
No. 3D05-490.
District Court of Appeal of Florida, Third District.
December 6, 2006.
*500 Robin Rosenblum; Arthur J. Morburger; Richard F. O'Brien, III, Miami, for appellants.
Podhurst Orseck, P.A., and Stephen F. Rosenthal, Miami, for appellees.
Before GREEN and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
GREEN, J.
Jorge Eliezer Garces, Co-Personal Representative of the Estate of Silvana Lorena Lopez, appeals orders denying his motion to apportion attorney's fees, denying his motion to recover costs from the decedent's minor children's individual recovery, granting Co-Personal Representative Eduardo Montano's motion to discharge Garces's attorneys' charging lien, and order dismissing the case with prejudice. We reverse these orders.
*501 In 1998, Silvana Lopez died shortly after surgery. Her husband, Garces, sought appointment as Personal Representative of her estate to investigate possible wrongful death and malpractice claims on behalf of himself, the estate, and Silvana's two surviving sons. The boys' natural father is appellee Eduardo Montano.[1] Garces retained attorneys Robin Rosenblum and Philip Gerson (collectively "Garces attorneys"). In 1999, shortly after they were retained, Garces's attorneys wrote to Montano, requesting his cooperation and informing him that the action was being pursued. Montano did not object and told Garces that he did not intend to pursue the action on the children's behalf. In fact, Montano did nothing for the next two years. The Garces attorneys proceeded with extensive investigations, pre-suit discovery and work on the case.
The Garces attorneys consulted with ten medical experts and developed the medical liability case. Thereafter, the statutorily mandated pre-suit discovery proceedings were conducted. The transcribed statements of all the defendant physicians and the defendant hospital's key medical staff, attending the decedent shortly before her death, were taken. The Garces attorneys sought production of hospital documents and the hospital operator logs. These revealed significant delays in affording the decedent the appropriate care for her condition. These pre-suit discovery steps culminated in the production of the statutorily required medical expert affidavit, setting forth the grounds for the malpractice action. In November 2000, the Garces attorneys also successfully filed a motion for the tolling of the two-year statute of limitations period. The complaint was filed in June 2001.
In February 2001, two and a half years after the Garces attorneys began conducting pre-suit investigations in the cause, and six months after the expiration of the statute of limitations, the law firm of Podhurst Orseck, PA ("Podhurst"), informed the Garces attorneys by letter that they had been hired by Montano to pursue a wrongful death claim on behalf of the decedent's sons. Podhurst attached its December 2000 petition tolling the statute of limitations to the letter. The Garces attorneys responded that the lawsuit was already underway, and that they would welcome Montano's participation. Podhurst did not reply to this letter.
Montano later sought to be appointed as Co-Personal Representative in the probate case. The court appointed him in August 2001.[2] Podhurst filed a notice of appearance in the wrongful death action in September 2001, three months after the filing of the initial complaint. Podhurst had not conducted any significant investigations, and had only consulted with one expert. For quite some time, Podhurst was not prepared to move forward with the case and agreed that the Garces attorneys should continue handling the pending discovery.
In April 2003, Podhurst began conducting discovery in the case. The Podhurst and Garces attorneys collaborated in all pertinent respects. Podhurst conducted the depositions, and consulted with the experts retained by the Garces attorneys. Podhurst repeatedly requested help from *502 Garces's attorneys in preparing the case for trial and up to the time of settlement. Significantly, the only medical expert qualified to testify at trial was the expert retained by Garces's attorneys and this expert was only disclosed as a trial witness at the insistence of Garces's attorneys. Additionally, Podhurst raised their initial settlement demand on the minors' behalf at the insistence of Garces's attorneys and based upon the economic analysis performed by the economic expert retained by Garces's attorneys. This resulted in a significantly higher recovery for the children than Podhurst had originally anticipated.
Between October 2004 and January 2005, a settlement was procured on behalf of the parties. Under the terms of the settlement, the children received $1,741,267.52, the estate received $77,500, and Garces received $22,500. The issue in the case then turned to the allocation of attorney's fees and costs.
In December 2004, Podhurst filed a motion seeking approval of the settlement and allocation of the proceeds. This motion was silent as to fee allocation. The next day, Garces's attorneys filed a cross-motion for approval of the settlement, and for apportionment of fees and costs. The court approved the settlement, and a contingent fee award of 40% of the first million dollars recovered, and 30% of the excess. The court reserved jurisdiction to allocate attorneys' fees and costs. The court set a hearing for January 25, 2005, to address the apportionment of fees issue.
On January 19, 2005, Garces's attorneys filed an affidavit and a memorandum of law in support of the apportionment. The affidavit detailed the attorney's extensive steps and work in moving the case forward before Podhurst's involvement, and also their significant involvement thereafter. On January 21, Podhurst filed a motion to discharge the Garces attorneys' charging lien against the settlement proceeds of the children; a motion for apportionment of the fees; and a response to the Garces motion for apportionment of fees. In response to Garces's motion for apportionment of fees, Podhurst basically asserted that Garces's attorneys had done little more than paper the file in an attempt to collect a fee, and was therefore not entitled to share in any fee from the minors' recovery. Notably absent in this response, however, was any detailed recitation of Podhurst's presuit involvement to move the case forward.
At the hearing on the fee allocation issue, Podhurst essentially argued that the Garces attorneys were not entitled to any fee from the children's settlement because there was conflict of interest between the minors and Garces. The court denied Garces's motion to apportion fees, granted Montano's motion to discharge the lien, and ruled that the Garces attorneys were ineligible to receive any fee from the children's portion of the settlement. The $696,507.01 in fees from those proceeds was awarded solely to Podhurst.
In February 2005, attorney Rosenblum individually filed a motion to apportion and approve costs and memorandum of law. She also submitted an itemized statement of the costs incurred by the Garces attorneys in prosecuting the case, including expert's bills, expert consultation fees, filing fees and pre-suit deposition expenses. The motion sought to apportion the costs among all the plaintiffs in proportion to the amounts awarded to them, under section 768.26, Florida Statutes, as the efforts of the litigation benefited all parties equally. Additionally, many of the costs incurred resulted from requests from Podhurst. The court denied the motion for reimbursement of costs from the minors' settlement.
*503 Two weeks later, Podhurst moved the court for its guidance regarding the dismissal of the suit as stipulated to in the settlement, in view of the fact that the Garces attorneys were now preparing individual fee motions. The court dismissed the case with prejudice, which thereby precluded Garces's attorneys from filing their motions. This appeal followed.
We reverse the various orders entered in this cause regarding disposition of the fees and costs, and hold that the trial court's conclusion that some conflict of interest precluded the Garces attorneys from being compensated from the minors' recovery is not supported by the record before us or the law. We thus remand for further proceedings pursuant to Wiggins v. Estate of Wright, 850 So.2d 444 (Fla. 2003).
As a threshold matter, we hold that there is no legal basis in the record to conclude that a conflict of interest existed among Garces and the minor children on which to base the disparate fee distribution. The only issue litigated in this cause was that of liability. Without question, all of the decedent's survivors had a common interest in determining liability to the greatest extent possible in order to maximize each party's recovery. There was never any litigation regarding the allocation of the settlement proceeds, which might have resulted in a conflict.[3]Compare In Re Estate of Catapane, 759 So.2d 9 (Fla. 4th DCA 2000). The facts raised by Podhurst, to bolster its argument that a conflict existed, have no bearing on the issue in the medical malpractice case  i.e. liability. Hence, conflict of interest is not a basis for awarding Podhurst the lion's share of the fees, without regard to Garces's attorneys' proportionately higher expenditure of time, money and effort.
Having established that no conflict of interest exists in this cause, we turn next to the appropriate allocation of the fees.[4] The court erred in awarding the entire fee payable from the children's settlement to the Podhurst firm. This award is basically a windfall to Podhurst and doesn't recognize the legwork and background work that the Garces attorneys performed in the case before Podhurst ever came on board. There can be no question that all these efforts handsomely benefited the minors; they received a significant settlement. The proper allocation would have been to award the Garces attorneys a fee proportionate to their efforts from the recovery of the minors. The remainder should go to the Podhurst firm.
It is of no moment that the Garces attorneys had no retainer agreement with the minor children. These attorneys represented the original Personal Representative in the case, who also represented the interest of the children, as survivors. There is no requirement that such an agreement exist before the attorneys can recover their fee. Catapane, 759 So.2d at 11; Perris v. Estate of Perris, 764 So.2d 870 (Fla. 4th DCA 2000). The estate prosecutes the case for the benefit of all survivors. The fact that the minors, through their guardian, chose to hire separate representation, should not penalize or reduce the fee for the work performed by Garces's attorneys, which served to significantly *504 move this case to its favorable conclusion for all involved.
The Florida Supreme Court in Wiggins, 850 So.2d at 450, concluded that "[w]hen survivors have competing claims, and are represented by separate attorneys, awarding attorneys' fees from a wrongful death suit in a manner commensurate with the attorneys' work properly provides for proportional payment of attorneys' fees by all survivors, out of their respective awards." Here, as in Wiggins, the fees should have been awarded proportionately from all the survivors' recovery based on the attorneys' work. The Wiggins court approved the Catapane method of allocating fees based on the total settlement proceeds, reduced by the amount necessary to reasonably compensate the other survivors' attorneys for their services in representing those survivors. Wiggins, 850 So.2d at 450. Where it can be shown that one attorney played a greater role in securing a total award, a larger fee is appropriate for that attorney. Id.
On remand, in following this formula, the trial court shall assess the fee from the total settlement proceeds based on the 40/30 percentages it approved earlier, and distribute it proportionately based on the amount of work that each group of attorneys did on the case. Wiggins, 850 So.2d at 448.
As for the trial court's denial of the motion to apportion costs among the parties, we reverse that order as well. There can be no logical argument that some speculative conflict of interest should shield the minors from sharing in the cost of filing and pursuing this litigation, from which they received the settlement. Section 768.26 unequivocally states that litigation expenses shall be "deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them." In this case, there were no "expenses incurred for the benefit of a particular survivor," § 768.26, Fla. Stat., as the liability issues were jointly litigated for the mutual benefit of all the survivors.
Reversed and remanded with instructions.
NOTES
[1] At the time of the birth of her children, and of her death, Lopez was separated from Garces and living with Montano.
[2] The probate court appointed Montano as Co-Personal Representative finding that there was a potential for a conflict of interest between Garces and the decedent's sons based upon the legality of the marriage between the decedent and Garces and the possible allocation of damages. This ruling is not at issue on this appeal.
[3] Curiously, the settlements were considerably healthier based on Garces's attorneys' recommendation that Podhurst increase their offers. Additionally, the allocation of the settlement proceeds has not been contested by Garces or the estate.
[4] The parties do not take issue with the trial court's 40%/30% fee allowance and we do not disturb this ruling.